JAMES ROGERS and others, Respondents, v. WILLIAM A. WHEELER and others, Trustees, &c., Appellants.

(GENERAL TERM, THIRD DEPARTMENT, SEPTEMBER, 1870.)

The defendants, as trustees for the mortgage bondholders of a railroad company, obtained a decree of foreclosure and sale under the mortgage, by which they were authorized in default of bidders to purchase the mortgaged property as trustees, also to operate the railroad and receive the income thereof, until a sale or transfer; having purchased under the decree, and operated the road as thereby provided until a transfer to a company newly organized.—*Held*, that they were liable as common carriers for goods, received by them as such, while operating the road as trustees.

*Held*, further, that the defendants were not in possession of the property as receivers thereof, and were not relieved from liability as standing in such relation to the court, their accountability being not to the court, but to the bondholders.

And it seems that without the provisions of the decree authorizing them, it was the duty of the defendants to bid in the property if necessary to protect the interests of their *cestuis que trust*.

*Held*, further, the defendants having surrendered, conveyed and delivered the whole property purchased, to a company newly organized, in obedience to a decree of the court, which provided for full indemnity to them by lien upon the property, as " against all liability of every description, incurred or to arise out of, any act or contract done, or made, or omitted to be done, by them as such trustees," and having in the deed reserved such lien, that the transfer did not affect their liability for goods received by them as common carriers before the same took place.

THIS was an appeal from an order sustaining a demurrer to certain defences, interposed to the complaints in an action against the defendants, seeking to charge them as common carriers. The facts are stated in the opinion of the court.

*W. C. Brown*, for the appellants.

*M. Hale*, for the respondents.

Present—MILLER, P. J., POTTER and PARKER, JJ.

By the Court—PARKER, J. This is an appeal from an order of the Special Term, sustaining a demurrer to the fifth

Rogers *v.* Wheeler.

and sixth defences of the answer. The complaint avers, in substance, that the defendants were in 1864 engaged in the business of transporting goods for hire, as common carriers, from Ogdensburgh to Rouse's Point, over the Northern railroad; and that as such common carriers they received from plaintiffs and undertook to carry and deliver to plaintiffs 8,000 bushels of wheat, of the value of $25,000. That they failed to perform their said agreement; but that by their negligence a large amount of the wheat, of the value of $20,000, was destroyed by fire and lost. The fifth defence sets forth, in substance, that the defendants, being mortgagees of the Northern Railroad Company, in trust for certain bond-holders of said company, of all the property, real and personal, of said company, upon the default of the company, foreclosed by action the two mortgages so held by them, in which action a decree was, on the 8th day of April, 1856, made for the sale of such property, which decree is set forth, authorizing these defendants, upon default of bidders, on such sale, to become the purchasers of the mortgaged property at a bid not less than $2,000,000, in trust for such bondholders, with authority to sell the same, or lease the same from year to year, for the benefit of the bondholders; or upon the organization of a new railroad corporation, to transfer and assign the same to such new corporation and receive stock of such corporation in payment, and transfer such stock to the bondholders in proportion to the amount of bonds held by them respectively; provided such corporation should first indemnify them against all liabilities then outstanding against them on account of any act or engagement in the manage-ment of the trust property, and until the sale or transfer of such property to such corporation; that said trustees might continue to operate the railroad and receive the income thereof, appointing all necessary agents and subordinates for the complete operation of said road; and that they might purchase the necessary supplies, fuel, iron, ties, etc., and keep the road, rolling stock, fixtures and appurtenances in good and proper repair, preventing all waste, injury and destruc-

tion of the same.   That the defendants, as such trustees, pursuant to such decree, did bid in, and purchase the property in trust, and did take possession and charge of said road, and properly manage, and so continue to manage the same, until August 1st, 1865, when they, by direction of the court, transferred the same to the Ogdensburgh and Lake Champlain Railroad Company; and they allege that in regard to all the matters referred to in the complaint, they acted with due and proper care and diligence, and with sound discretion as receiving officers of the court of equity; and they insist and submit that they ought not to be held personally responsible or liable, as common carriers, as though they were pursuing a business of that nature for personal profit; whereas they were only in the charge of the property temporarily as appointees by the court, until the necessary legislative and judicial action could be had and obtained, to enable the owners of the property to be ascertained and placed in possession.

To this the plaintiffs demur, on the ground that it does not constitute a defence to the action.   This defence rests upon the ground that, although the defendants were engaged in the business of transporting goods for hire upon the railroad as common carriers, that is, carriers for hire of all goods offered them for carriage (2 Parsons on Contracts, 163; *Allen* v. *Sackrider*, 37 N. Y. R., 341), they are exempt from liability as common carriers; because they were not transacting the business for their personal profit, but as trustees for others, under an authority conferred upon them by the court, temporarily, until the necessary arrangements could be perfected to hand over the road to the parties in interest.   The defendants' counsel insists that the defendants were in possession of the railroad in the same capacity as receivers.

In this, I think, the learned counsel is in error.   It is not pretended that they were actually receivers.   They were plaintiffs in a foreclosure suit and obtained a decree for the sale of the mortgaged property; and, on such sale bid it in for the benefit of their *cestuis que trust,* and while holding it in trust, used it in the business of common carriers; in which business alone

it could be used.  True, in the decree of sale, which they obtained, they are specifically authorized to bid in the property, and thus temporarily to use it; but this authority, if it added anything to the duty and rights of the defendants, operates, I think, upon the trustees and *cestuis que trust*, as between themselves merely, and does not affect defendants' liability to perform any engagements between them and third persons, in regard to the use of the property.  They do not occupy any such relation to the court, or to the property as if they were receivers.  They were not officers of the court, as receivers are.

They did not hold the property by virtue of the appointment of the court, as receivers do.  It is because receivers are officers of the court administering property put into their hands for that purpose by the court, that they are protected. (Edw. on Receivers, 3.)  Manifestly the defendants were not in possession of the railroad and its appurtenances in the same capacity as receivers, but merely as trustees of the bondholders and accountable to them.

Without the provisions of the decree authorizing them, it was their duty to bid in the property if necessary to protect the interests of the bondholders.  This duty was not imposed upon them by the court. (*Clark* v. *Clark*, 8 Paige 157, 158); nor was the duty of operating the road thus imposed upon them.  The authority was at most permissive; and their acts voluntary and discretionary, and not acts of the court, by them as its officers.

When they come to deal with third persons, in the use of the property, there is no reason why they should not be responsible to them upon all their undertakings.  The fact that they are trustees, and accountable as such in the use of the railroad, does not relieve them from the full performance of all that they have undertaken to do for others, nor from the liabilities arising from failure to perform.

In the case of *Blumenthal* v. *Brainard* (38 Verm. R., 403), this doctrine was held even as against a receiver.  The language of the court is: " We think that the mere fact that

the defendants were acting as receivers under the appointment of the Court of Chancery, cannot be recognized as a defence to a suit at law for a breach of any obligation or duty which was fairly and voluntarily assumed by them in matters of business conducted or carried on by them while acting as such receivers. As between a receiver and the parties interested in the trust, the receiver would be responsible for negligence. But he might be liable to other parties in a larger or stricter degree of responsibility. The assumption by the defendants of the peculiar duties and extraordinary responsibilities arising from the relation of common carriers is not to be considered as necessarily, if at all incompatible with any duty or responsibility imposed upon them as receivers."

So in *Paige* v. *Smith* (99 Mass. R., 395), the court say: "Receivers running a railroad under appointment of a Court of Chancery in another State, who act as common carriers, and are there held liable as such to actions at law, may be sued as common carriers in this commonwealth."

In *Lanphear* v. *Buckingham* (33 Conn., 237), it was held that a trustee of a railroad, who operates the road for the benefit of bondholders or creditors, is liable in a suit brought against him under the statute by the administrator of a person fatally injured by negligent carriage.

In all these cases the doctrine is distinctly recognized, that the trusteeship of the defendants detracted nothing from their liability, and that where they were in possession and control of a railroad, holding themselves out as common carriers, and doing business as such, they became liable as such, and could not shield themselves from such liability by the fact that they were not operating the road for their own advantage, but as trustees, or even as receivers, for the benefit of others. As it was said by REDFIELD, Ch. J., in *Sprague* v. *Smith* (29 Verm., 421): "It would be perplexing in the extreme to require strangers suffering injury through the negligence of operatives under the defendants' control to look beyond the party exercising the control."

Rogers *v.* Wheeler.

The same principle of personal liability of trustees in reference to their dealings with third persons is applicable to executors, as shown by Chitty when he says: "So if an executor trustee carry on trade as trustee for the benefit of the children of the testator, he will be personally liable to pay the debts, and may even be made a bankrupt in respect to them." (1 Chitty Pl., 38.)

Indeed, if the defendants are merely trustees, and not acting in the capacity of receivers, I do not understand their counsel to claim for them exemption from liability as common carriers. That they were not acting in the capacity of receivers, I think, sufficiently appears from what has been already said. The facts, then, set up in the defendants' fifth answer, or defence, are not sufficient to constitute a defence to the action, and the demurrer thereto was well taken.

The sixth answer, or defence, is, in substance, that the defendants had, before the commencement of this suit, surrendered, conveyed and delivered over the whole property to the Ogdensburgh and Lake Champlain Railroad Company, in obedience to a decree or order of the court, which is set out in full, and which provides for full indemnity to defendants, by lien upon the property, "against all liability of every description incurred, or to arise out of any act or contract done or made, or omitted to be done by them as such trustees." The deed of conveyance by defendants to the company is also set out, and this reserves such lien. The decree and conveyance were made a year after the loss of the wheat, for which the action is brought. They were transactions to which the plaintiffs were not parties, and it is difficult to see how they can affect the liability of the defendants to the plaintiffs which had previously occurred.

The demurrer to this defence also was well taken.

The order sustaining the demurrers should, therefore, be affirmed with costs.

Order affirmed.